MANNING (ALSTON v.). See Case No. 266.

———

## Case No. 9,041.

MANNING et al. v. CAPE ANN ISINGLASS & GLUE CO. et al.

[4 Ban. & A. 612; 9 Reporter, 337.] [1]

Circuit Court, D. Massachusetts. Nov., 1879.[2]

PATENTS—MAKING ISINGLASS—PUBLIC USE.

1. The question of "public use," discussed.[2]
[Cited in Perkins v. Nashua C. & G. P. Co., 2 Fed. 453.]

2. Letters patent No. 134,690, granted to James Manning, January 7th, 1873, for an improvement in the manufacture of isinglass, *held* invalid.

[This was a bill in equity by John J. Manning and Caleb J. Norwood against the Cape Ann Isinglass & Glue Company and others, to restrain the infringement of certain letters patent.]

T. W. Clarke, for complainants.

Geo. L. Roberts & Bros., for defendants.

LOWELL, Circuit Judge. Ribbon isinglass is made by passing the macerated bladders of fish, especially of hake, through several sets of rollers which squeeze the sub-

stance first into a sheet somewhat like dough, and then into the translucent ribbons which are sold in the market. Heat makes the substance sticky and difficult to work in the earlier stages, and it is important that the first set of rollers, called "mumming rolls," should be kept cool. Ebenezer Rowe, in 1848, patented a mode of keeping these rollers supplied on the inside with cold water, and this method has not been superseded. James Manning, assignor of the plaintiffs. took out the patent in suit January 7th, 1873, No. 134,690, for an improvement in this art, or its machinery, by the addition of a stationary knife, or scraper, attached so near to each of the rollers as to clean it for its whole length at each revolution. He describes a machine like Rowe's, with his addition, and claims the described "method of converting isinglass into sheets of any desired thickness by running it between hollow rolls into which cold water is thrown to cool the compressing surfaces, such rolls being preferably made adjustable to graduate the degree of compression, and the adhering sheets being removed from the rolls by stationary scrapers or clearers and returned to the hopper, as required."

James Manning had been a manufacturer of isinglass, at Ipswich, for many years in partnership with one Norwood. In 1859 or 1860, scrapers were added to the rollers in that factory, and were used there by Manning & Norwood until 1867, when the firm was dissolved and this machinery was left with Norwood, and was used by him and his son until his death in 1871. James Manning built a factory at Rockport for his two sons, and they used similar machinery from 1867 or 1868 onwards.

The defendants have pleaded and proved the foregoing facts as showing a public use for more than two years before the application of James Manning for a patent, which was in December, 1872.

It has always been a prerequisite or condition precedent to the grant of a valid patent, that the thing patented shall not have been in use. By the English law, and formerly by ours, a use before the date of the patent, or of the application, destroyed the novelty of the invention. But for the last forty years we have permitted a use not exceeding two years before the application. Obvious reasons of policy and justice require that an inventor should not monopolize what he has neglected to patent for a considerable time, if, in the meantime, the public have acquired the knowledge of it, whether through him or from an independent source. Before 1870 it was generally understood that two years' use would not destroy the patent, unless it was had with the "consent and allowance" of the inventor. Those words are not found in the Statute of 1870, nor in the Revised Statutes; and Judge Blatchford has lately decided that they are no part even of the law of 1839 [5 Stat. 353]. Egbert v. Lippmann [Case No.

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission. 9 Reporter, 337, contains only a condensed report.]

[2] [Affirmed in 108 U. S. 462, 2 Sup. Ct. 860.]

4,306]. The point is not material here, because whatever was done with this invention was with James Manning's consent.

Our law has the expression "public use," and "public" has been added to the statute of monopolies by the courts of England. The governing idea is, that public knowledge makes public right, and, therefore, in England, a description of the invention in a written or printed book which is published by circulation, or in the specification of a patent which is public in its very nature, is the equivalent of public use, though there is nothing in the statute concerning knowledge. In this respect our statutes follow the decisions.

Public use means not only a use by the public but a use in public, that is to say, one which is not secret, and, therefore, one from which, so far as the inventor is concerned, the public may, by any of the chances of life, acquire the knowledge. A remarkable case is that of the lady who wore an improved pair of corsets given her by the inventor more than two years before he applied for a patent upon the article, which was held a public use. Egbert v. Lippmann [supra]. In a case like the present, the use of a machine by the inventor himself "in the ordinary way of the public use of a machine," which I understand to mean without special secrecy, will be a public use. Pitts v. Hall [Case No. 11,-192]; Bevin v. East Hampton Bell Co. [Id. 1,379]; M'Millin v. Barclay [Id. 8,902]; Re Adamson's Patent, 6 De Gex, M. & G. 420; Heath v. Smith, 3 El. & Bl. 256. The non-existence of public use being a condition precedent to the validity of the grant, the intent of the inventor not to abandon the invention, or his reasons for not applying for a patent, though of a most potent character, such as illness, are immaterial. See Pennock v. Dialogue, 2 Pet. [27 U. S.] 1, and the remarks of Marshall, C. J., on that case in Grant v. Raymond, 6 Pet. [31 U. S.] 218, 248; McClurg v. Kingsland, 1 How. [42 U. S.] 202, 208, per Baldwin, J.; Sisson v. Gilbert [Case No. 12,912]; Egbert v. Lippmann [supra]. Evidence that any one has copied the invention which is thus brought, presumptively, to the knowledge of mankind, is not necessary to the success of his defence. Such a fact would often be difficult to prove or disprove, and the use itself in any of the modes above explained, works a forfeiture, without more.

There is some evidence in the record tending to show that the use of this invention was either secret or experimental, or both; and evidence to oppose this. I have read the case with care, and am of opinion that the use at the factories in Ipswich and Rockport was a public use in the sense of the law, and was not for the purposes of experiment; and that the use was of the same improvement which is patented. As bearing upon this last point there was contradictory testimony as to whether the scrapers were made adjustable until within two years before the application. I think it probable that they were so made; but whether so or not, the adjustability of the rollers or the scrapers is not of the essence of the invention as described and claimed by the patentee, or in fact.

Bill dismissed with costs.

[NOTE. The cause was taken on appeal, by the complainants, to the supreme court, where the decree of the circuit court was affirmed, on the ground that the patent was void, for the reason that the invention had been in public use more than two years prior to the time application was made for a patent. 108 U. S. 462, 2 Sup. Ct. 860.]